IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARLA G. DEMPSEY; JOHN E. DEMPSEY, JR., <br><br>      Plaintiffs, <br><br>   vs. <br><br> WILD SIDE SPECIALTY TOURS, LLC; DOES 1-10, <br><br>      Defendant. | Civ. No. 21-00342 HG-KJM |

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 68)**

On August 19, 2018, Plaintiff Carla G. Dempsey and her husband John E. Dempsey, Jr. went on a snorkel tour off the coast of Oahu operated by Defendant Wild Side Specialty Tours, LLC. Defendant owned and managed the vessel that departed for the snorkeling tour from Waianae Boat Harbor.

Before departing, Plaintiffs signed a document entitled "WILD SIDE SPECIALTY TOURS ACKNOWLEDGMENT OF RISK AND WAIVER FOR ALL PARTICIPANTS." Mrs. Dempsey went snorkeling in the ocean off the coast of Oahu during the snorkeling tour. Upon her return to the vessel, she walked on the deck wearing wet fins from snorkeling. Mrs. Dempsey fell on the vessel and broke her ankle.

The vessel returned to Waianae Boat Harbor from which it had originally departed. Mrs. Dempsey sought medical treatment for her ankle. Plaintiffs claim she required multiple surgeries and rehabilitation.

Plaintiffs filed a Complaint against Defendant Wild Side Specialty Tours, LLC for negligence, loss of consortium, and damages pursuant to federal maritime law.

Defendant Wild Side Specialty Tours, LLC filed an Answer in which it has asserted a defense of waiver.  Mrs. Dempsey signed a release and waiver of liability prior to the snorkel tour.

Plaintiffs filed a Motion for Partial Summary Judgment claiming the release and waiver of liability is not enforceable.  Plaintiffs argue that the release and waiver of liability that was signed by Mrs. Dempsey is void as a matter of law.

Defendant opposes the Motion.

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 68) is **GRANTED.**

Defendant may not rely on the release and waiver of liability signed by Plaintiff Carla Dempsey as a defense.  The release is void as a matter of law pursuant to 46 U.S.C. § 30509.

## PROCEDURAL HISTORY

On August 13, 2021, Plaintiffs filed the Complaint.  (ECF No. 1).

On June 15, 2022, Plaintiffs filed the Motion for Partial Summary Judgment and a Concise Statement of Facts.  (ECF Nos. 68 and 69).

On June 22, 2022, the Court issued a briefing schedule.  (ECF No. 70).

On July 7, 2022, Defendant filed an Opposition and Concise Statement of Facts in Opposition.  (ECF Nos. 75 and 76).

On July 20, 2022, Plaintiffs filed their Reply and Concise Statement of Facts in Reply.  (ECF Nos. 77 and 78).

On August 1, 2022, the Court issued a Minute Order setting the hearing on Plaintiffs' Motion.  (ECF No. 82).

On October 5, 2022, the Court held a hearing on Plaintiffs' Motion.  (ECF No. 94).

**BACKGROUND**

The Parties do not dispute the following facts:

On August 19, 2018, Plaintiffs Carla and John Dempsey were fare-paying passengers aboard Defendant Wild Side Specialty Tours, LLC's vessel M/V Island Spirit.  (Pl.'s CSF at ¶ 1, ECF No. 69).  Prior to boarding the vessel, Plaintiffs signed a document entitled, "ACKNOWLEDGMENT OF RISK AND WAIVER FOR ALL PARTICIPANTS."  (Wild Side Specialty Tours Release and Waiver, attached as Ex. 3 to Pl.'s CSF, ECF No. 69-4).

Plaintiffs boarded the vessel at Waianae Small Boat Harbor.  (Pl.'s CSF at ¶¶ 1-2, ECF No. 69).  They, along with other passengers, were taken on a snorkeling tour off the island of Oahu.  (Id.)

Following the snorkeling tour in the ocean, Plaintiff Carla Dempsey walked on the vessel deck while wearing wet fins.  (Id. at ¶ 5).  Mrs. Dempsey fell and broke her ankle.  (Id.)  Plaintiffs assert that Mrs. Dempsey's injury was caused by

Defendant's "negligence in failing to properly instruct and warn passengers about the use of fins aboard the vessel." (Id.)

After Mrs. Dempsey fell, the vessel returned to Waianae Boat Harbor. (Id. at ¶ 1).

Plaintiffs filed a Complaint against Defendant Wild Side Specialty Tours, LLC, asserting claims for negligence and loss of consortium pursuant to federal maritime law. (Complaint, ECF No. 1).

Defendant asserted a defense based on the release and waiver signed by Plaintiffs prior to boarding the vessel. (Pl.'s CSF at ¶ 6, ECF No. 69; Answer, ECF No. 10).

Plaintiffs argue the release and waiver is void as a matter of law pursuant to federal maritime law. Plaintiffs seek partial summary judgment to preclude Defendant from relying on the release and waiver signed by Plaintiffs at trial.

## **STANDARD OF REVIEW**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes

4

demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872

5

F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

### I. There Is Admiralty Tort Jurisdiction Over Plaintiffs' Claims

A party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) for a tort claim must satisfy two conditions. First, admiralty tort jurisdiction has a locality requirement. Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). The plaintiff must demonstrate that the tort occurred on navigable water or demonstrate that the injury suffered on land was caused by a vessel on navigable water. Id.

Second, admiralty tort jurisdiction requires that the tort be connected with traditional maritime activity.  Id.

The Parties agree that federal admiralty jurisdiction applies in this case.  (Def.'s CSF at ¶ 8, ECF No. 76).  The Parties do not dispute that Plaintiff Carla Dempsey fell on Defendant's vessel while it was on navigable water and that it is connected to a traditional maritime activity.

## II. 46 U.S.C. § 30509 Bars Defendant From Relying On The Release And Waiver Of Liability Signed By Plaintiffs

A claim for maritime negligence requires the plaintiff to prove (1) duty; (2) breach; (3) causation; and, (4) damages. Samuels v. Holland Am. Line-USA Inc., 656 F.3d 948, 953 (9th Cir. 2011).  The duty of care that applies to negligence in maritime cases is that of reasonable care under the circumstances.  Peters v. Titan Nav. Co., 857 F.2d 1342, 1345 (9th Cir. 1988).  The degree of care that is required and the determination of what is reasonable under the circumstances is particular to each case. In re Catalina Cruises, Inc., 137 F.3d 1422, 1425 (9th Cir. 1998).

Plaintiffs claim that Defendant owed Mrs. Dempsey a duty to provide instructions on safety regarding the snorkeling equipment.  They assert Defendant's failure to provide instructions breached their duty and caused Mrs. Dempsey to fall, resulting in damages.

Plaintiffs seek to proceed to trial on their negligence and loss of consortium claims.  Defendant seeks to preclude Plaintiffs from recovering on the basis that Plaintiffs signed a waiver and release regarding liability as to Defendant Wild Side Speciality Tours, LLC.

Plaintiffs seek to preclude the defense at trial. Plaintiffs argue that the waiver and release is void pursuant to the federal Maritime Code, 46 U.S.C. § 30509, entitled "Provisions limiting liability for personal injury or death."

**A.   Federal Maritime Code Provision Regarding Limiting Liability For Personal Injury**

46 U.S.C. § 30509 **Provisions limiting liability for personal injury or death**, (effective October 6, 2006), provides, as follows:

  **(a)   Prohibitions.—**

  **(1) In general.—**The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting–

  **(A)**   the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents;

  or

  **(B)**   the right of a claimant for personal injury or death to a trial by court of competent jurisdiction.

  **(2) Voidness.—**A provision described in paragraph (1) is void.

Plaintiffs argue that Section 30509(a) voids the waiver and release signed by Plaintiffs.  It is undisputed that Plaintiffs were fare-paying passengers on Defendant's vessel.  Plaintiffs claim that the federal Maritime Code bars enforcement of the waiver and release that they signed because Defendant's vessel transported passengers "between ports in the United States" as set forth in Section 30509(a).

Defendant disagrees.  Defendant argues that the statute does not apply in this case because its vessel disembarked and returned to the same port, Waianae Boat Harbor.  Defendant claims that the statute does not apply because the vessel did not transport passengers "between ports in the United States."

### B.   Ordinary Meaning Of "Between Ports In The United States"

The question raised by the Parties is one of statutory interpretation.  Issues of statutory interpretation are questions of law.  Nelson v. Heiss, 271 F.3d 891, 893 (9th Cir. 2001).  A statute's language is the starting point for statutory interpretation.  Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002).  If the statute does not define the relevant terms, courts give them "their ordinary, contemporary, common meaning," and "may consult dictionary definitions."  City of Los Angeles v. Barr, 941 F.3d 931, 940 (9th Cir. 2019) (quoting Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty., 627 F.3d 1268, 1270 (9th Cir. 2010)).

9

Here, the dispute concerns the phrase "between ports in the United States." There is no dispute that the vessel departed from the Waianae Boat Harbor and returned to the same Waianae Boat Harbor. The dispute is whether the statute applies when the vessel departs from one port and returns to the same port.

Courts generally look to dictionary definitions to determine the ordinary and common meaning of terms. City of Los Angeles, 941 F.3d at 940; see Taniguchi v. Kan Pac. Saipan, Ltd, 566 U.S. 560, 568-69 (2012).

The words of a statute, however, must be read in their context and with a view to their place in the overall statutory scheme. Roberts v. Sea-Land Srvs, Inc., 566 U.S. 93, 101 (2012).

The United States Supreme Court has explained that when the meaning of the statute's terms is plain, the judicial inquiry ends. Bostock v. Clayton Cnty., Georgia, 140 S.Ct. 1731, 1749 (2020). "Courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992).

### 1. 46 U.S.C. § 30509 Applies To Defendant's Vessel And Is Not Limited To Common Carriers

Defendant raises two main arguments with respect to Section 30509(a)(1)(A) in this case. The first argument is whether Section 30509(a)(1)(A) applies exclusively to common carriers or applies to all vessels on navigable waters.

Defendant asserts it was operating a snorkeling tour and was not a common carrier.  Defendant argues that the Court should find that the statute is limited to common carriers, even though it is not so specified or so limited in the text of the statute.

Contrary to Defendant's position, the statute is not limited to common carriers.  Congress specifically defined the vessels that are subject to 46 U.S.C. § 30509's limitation on liability.  Congress explicitly stated that Section 30509 is not limited to common carriers, but it "applies to seagoing vessels and vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters."  46 U.S.C. § 30502.

### 2. 26 U.S.C. § 30509 Applies To Vessels Transporting Passengers Between Ports In The United States

Defendant next argues that Section 30509 is not applicable in this case because Defendant was not "transporting passengers between ports in the United States."  It is undisputed that the vessel departed from Waianae Boat Harbor and returned to the same port.

Defendant asserts that the statute's phrase "between ports" requires the vessel to depart from one port and return to a different port.

This argument has been specifically rejected by another district court judge in the United States District Court for the District of Hawaii in Ehart v. Lahaina Divers Inc., 21-cv-00475 SOM-KJM, 2022 WL 1472048, *9-*13 (D. Haw. May 10, 2022).  In

11

Ehart, a husband and wife went on a chartered SCUBA and snorkeling tour that departed from Lahaina Harbor on the island of Maui. Id. at *9. The vessel took the passengers snorkeling near Molokini Crater, and Maureen Ehart disappeared while snorkeling on the tour. Id. at *1. The vessel returned to Lahaina Harbor when Ehart was unable to be located. Id. at *9. Ehart is presumed dead and her family sued Lahaina Divers Inc. The tour operator and owner of the vessel argued that the liability waiver that Ehart signed before departing on the tour shielded it from liability. The plaintiff argued that the waiver was unenforceable pursuant to 46 U.S.C. § 30509. Just as in this case, the defendant in Ehart claimed that Section 30509 did not apply to the tour operator's vessel because it departed and returned to the same port. The District Court Judge rejected the argument.

The order analyzed the dictionary definitions of "between" and "port." Ehart, 2022 WL 1472048, *10. The definitions reflected that "between" was defined as connecting spatially as in time, space, or interval that separates. Id. Port was defined as a place along a coast or harbor where ships load or unload cargo. Id. Nothing in the dictionary definitions, upon which the Court here also relies, supports Defendant's argument that "between ports" requires the ports to be two different locations. See id. at *10.

Defendant's interpretation would exclude any vessel that departed with fare-paying passengers from one port and returned

12

to the same port no matter the distance, time, or stops in between. As explained by the district court in Ehart, "applying 'ports' only when journeys are between Port A and Port B leads to odd and absurd results." Id. (citing Pub. Citizen v. U.S. Dep't of Just., 491 U.S. 440, 454 (1989) (explaining that when the literal reading of a statutory term would compel an odd result, the court must look to legislative intent to determine the proper scope of the term)).

Defendant urges this Court to interpret the phrase "between ports" as "between different ports." The statute, however, does not use the term different. If Congress had intended to include such a limitation, Congress could have easily stated that Section 30509 only applies when carrying passengers "between **different** ports." It did not do so.

46 U.S.C. § 30509 was enacted on October 6, 2006 to replace its predecesor statute 46 U.S.C. § 183c(a). Section 183c(a) was passed, in part, to void waivers printed on the back of steamship tickets in the event of damage or injury caused by owners or employees of ships. Matter of Pac. Adventures, Inc., 5 F.Supp.2d 874, 879 (D. Haw. 1998); S.Rep. No. 2061, 74th Cong., 2d Sess., 6 (1936); H.R.Rep. No. 2517, 74th Cong., 2d Sess., 6 (1936). Congressional testimony included references to the General Slocum disaster where 957 of the 1,388 passengers and crew on the vessel died. Amending the limited liability Act, Hearing on H.R. 9969 Before the Committee on Merchat Marine and Fisheries, 74th Cong. 23, 51 (1936). The General Slocum was chartered to take

passengers from New York Harbor to a picnic area and back, but it caught fire in the harbor and most of the life preservers were rotten and the fire safety equipment did not work, resulting in hundreds of casualties. General Slocum Disaster, Hearing on H.R. 4154 Before the Committee on Claims, 61st Cong. 3-4 (1910).

In enacting Section 30509's predecesor statute, Section 183c, Congress was specifically referring to vessels, like the General Slocum, that were taking passengers on day trips from one port back to the same port. Congress sought to prevent owners and operators of the vessel from shielding themselves from liability with general waivers. Congress enacted Section 183c(a) explaining that it "is intended to, and in the opinion of the committee will, put a stop to all such practices and practices of like character." S.Rep. No. 2061, 74th Cong., 2d Sess., 6-7 (1936); H.R.Rep. No. 2517, 74th Cong., 2d Sess., 6-7 (1936).

The Court agrees with the District Court in Ehart that Section 30509 bars enforceability of the waiver signed by Plaintiffs for vessels transporting passengers from one port and back to the same port. The plain meaning of the terms "between ports" and the legislative history of the statute and its predecesor statute support the finding that Section 30509 applies to vessels that depart and return to the same port in the United States. See also Matter of Pac. Adventures, Inc., Civ. Nos. 97-00216 ACK, 97-325 ACK, 5 F.Supp.2d 874, 879 (D. Haw. March 26, 1998) (finding that term "between ports" in Section 183c applied to a dive boat that transported the plaintiff to and from the

14

same port); Hambrook v. Smith, Civ. No. 14-00132 ACK-BMK, 2015 WL 3480887, *5 (D. Haw. June 2, 2015) (finding a waiver of negligence was invalid for a dive boat that transported the plaintiff to and from the same port).

The Court acknowledges that Defendant relies upon the Eleventh Circuit Court of Appeals decision in Shultz v. Florida Keys Dive Center, Inc., 224 F.3d 1269, 1271 (11th Cir. 2000), which ruled to the contrary. This Court is not bound by Shultz and finds it unpersuasive. The Court also declines to follow the district court decisions relying on the reasoning in Shultz. See, e.g., Olivelli v. Sappo Corp., 225 F.Supp.2d 109, 119 (D. P.R. 2002).

Here, Defendant's vessel was transporting Plaintiffs, who were fare paying passengers, between ports in the United States as provided in Section 30509. The waiver of liability for personal injury signed by Plaintiffs is void pursuant to 46 U.S.C. § 30509. See Ehart, 2022 WL 1472048 at *12.

The questions as to whether Defendant was negligent and caused Plaintiffs' alleged damages are questions for trial. Wyler v. Holland Am. Line-USA, Inc., 348 F.Supp.2d 1206, 1210 (W.D. Wash. 2003).

//
//
//
//
//

**CONCLUSION**

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 68) is **GRANTED**.

Defendant may not rely on the release and waiver of liability signed by Plaintiff Carla Dempsey as a defense at trial. The release is void as a matter of law pursuant to 46 U.S.C. § 30509.

IT IS SO ORDERED.

DATED: October 26, 2022, Honolulu, Hawaii.

Helen Gillmor
United States District Judge